J. U. Moeckley *et al.* v. Chicago & Northwestern
Railway Company, Appellant.

1   "Repairs" of Railroad Fence Defined. Chapter 3, Acts of
    1888, prescribes how fences rebuilt, or repaired thereafter, shall be
    constructed. *Held*, the fastening of loose, and replacing defective,
    boards without the use of new materials, is not such "repairs" as to
2   oblige the railroad company to bring the fence to the standard pre-
    scribed in said act.

*Appeal from Polk District Court.*—Hon. S. F. Balliet,
Judge.

Monday, December 17, 1894.

Action to recover double damages for killing one
horse and injuring two others.   Verdict and judgment
for plaintiffs.   Defendant appeals.—*Reversed.*

The petition charges that on July 19, 1892, three
horses belonging to plaintiffs, which were running at
large in their pasture, went upon defendant's right of
way by reason of a defective fence, at a place where
defendant had the right to fence its track, and were
while there so frightened by defendant's cars and
engines that they ran into a bridge, or culvert, and
were injured; that one of the horses was so seriously
injured that it was killed by defendant's employees, and
the others were permanently injured.   Other allega-
tions are made as to the value of the horses, the
amount of damage, the sums expended in and about
caring for their injuries, and the service of the affidavit
and notice as a basis for the claim of double damages.
The defendant admits that the horses got upon the
track, and became frightened by a train of cars, and
that they ran into a bridge, and were injured.   It also
admits the service of the affidavit and notice.   All

other allegations of the petition are denied. The cause was tried to a jury, which returned a verdict for plaintiffs, upon which judgment was entered.

*Hubbard & Dawley* for appellant.

*Crom Bowen* for appellees.

Kinne, J.—I.  Prior to 1888, there was no statute in this state making it obligatory upon railway companies to fence their tracks.  Under the law in force prior to that date, it was provided that any railway company failing to fence against live stock running at large, at places where it had the right to fence, should be liable to the owner of any such stock injured or killed by reason of the want of such fence for the value of the property or damage caused, unless the same was occasioned by the willful act of the owner, or his agent. Code, sec. 1289.  Under that law and the circumstances therein stated, a company would be liable unless it maintained a fence which was reasonably sufficient to turn stock.  Chapter 30, of the Acts of the Twenty-second General Assembly (1888), provides that all railroad companies "which have not already erected a lawful fence, shall construct, maintain, and keep in good repair a suitable fence of posts and barb wire, or posts and boards, on each side of the track.  *  *  * Said fences to be constructed either of five barbed wires, securely fastened to posts, said posts to be not more than twenty feet apart, and not less than fifty-four inches in height, or of five boards securely nailed to posts, said posts to be not further than eight feet apart, and said fence to be not less than fifty-four inches in height.  Provided: When said railroad corporations, who have now their fences built, shall, when they rebuild, or repair their fences, the same shall be built as provided in this act.  *  *  *. Provided further, that nothing in this act shall in any

way limit or qualify the liability of any corporation, or person, owning or operating a railroad that fails to fence the same against live stock running at large, for any stock injured, or killed, by reason of the want of such fence as now provided for in section 1289, of the Code of 1873." The defendant asked the court to give the following instructions, which were refused: "(2) The defendant was not required by law to have its fence at that place fifty-four inches high. In this case it is not shown that the height of the fence had anything to do with the horses breaking it down, or getting through it. It is not claimed that the horses jumped over it. You are therefore instructed that the height of the fence can not be considered by you as tending to prove negligence of the defendant in either the construction or repair of the fence." "(7) The law requiring railway fences to be of a certain height has no application to this case." The court, on its own motion, gave the following, among other instructions: "(2) Under the laws of the state of Iowa, all railroad companies owning or operating any railway within the state are required to fence such railway against live stock running at large, at all points where such right to fence exists; *and the point at which the occurrence complained of in this case took place was one of the points* at which the defendant had the right and *was required* to fence. And the defendant, under the law, was required to construct, maintain, and keep in good repair a suitable fence of *five* boards, securely nailed to posts, and posts to be not further than eight feet apart, and said fence to be not less than *fifty-four* inches in height; and, if it fails to fence and keep in good repair said fences, it is liable to the owner of any stock injured or killed by the reason of the want of any such fence." And in the third instruction the court said: "And if you find from a preponderance of the evidence in this case that the defendant has not maintained such a fence as in

these instructions mentioned, and that it has not exercised reasonable care and prudence in so maintaining it, your verdict should be for the plaintiffs." The court said further in the sixth instruction: "The fact that the fence is less than fifty-four inches high, of itself, would not be sufficient to render the defendant liable; but this fact may be considered with all the other facts and conditions disclosed by the testimony in determining whether or not the fence was a reasonably sufficient fence, as elsewhere mentioned in these instructions." In the twelfth instruction the court said to the jury: "If you find that the defendant had repaired its fence between July 4, 1888, and July 19, 1892, then it was its duty to have constructed its fence fifty-four inches high, and with either five barb wires, or five boards, securely nailed to the posts."

As the fence in controversy, at the place where the horses got upon the right of way, had been erected several years prior to the passage of the act of 1888, it is insisted that the court erred in refusing to give the instructions asked, as well as in giving those above set forth. The defendant did not rebuild its fence after the passage of the act of 1888, but it did make certain repairs thereon. These repairs consisted in nailing on loose boards, and putting on boards in place of those which had become defective. In doing this work no new material was used, but boards were brought from a point north of this place where repairs had been made, and used to repair the fence at this place. The fence was never fifty-four inches high, and its height was not changed when the repairs were made. It will be seen that the act of 1888 provides that, when existing fences are rebuilt or repaired, "the same shall be built as provided in this act." The question is, were the repairs thus made "repairs," within the meaning of that word as used in the act of 1888, which required the repaired fence

to be fifty-four inches high and in other respects as in
the act provided. It may be that the repairs made
bring the case within the literal reading of the statute;
but we can not believe that it was the intention of the
legislature, by the use of the word "repair," to mean
that when a board was required to be put on a fence,
or one thereon nailed to its place, that would be such
a repair of the fence as is contemplated by the act, the
making of which would require putting in new posts,
whether needed or not, and the practical rebuilding of
a fence to the height of fifty-four inches, though the
fence itself may not have been in a condition to require
rebuilding. We think that the repairs which should
be held to have that effect must consist in a virtual
rebuilding of a portion of the fence, requiring new
posts to be put in, and the repairs to be of such a gen-
eral character as to involve and include the structure
and height of the fence. In view of this construction
of the statute, the court should have instructed the
jury that the fence having been built prior to the
taking effect of the act of 1888, defendant was not
required to have its fence fifty-four inches high, unless
they should find from the evidence that the fence was
repaired after the act took effect, and unless such
repairs were of such a character as to include the
structure and height of the fence, requiring new posts
to be put in, and that the putting on of a board or
boards in place of defective ones, or nailing fast boards
which had become loose, would not be a "repair" of
the fence, within the meaning of that word as used in
the act of 1888. The instructions given, in so far as
they required defendant to build and maintain its fence
at a height of fifty-four inches, regardless of the char-
acter or extent of the repairs made thereon, were
erroneous. The twelfth instruction, in the form given,
was erroneous. The jury should have been told, as
we have indicated, what the character and extent of

the repairs must be to require the fence to be made fifty-four inches high. It is claimed that the instructions are conflicting. That one rule is announced in the second and third instructions, and another rule as to the same matter in the twelfth instruction. At least, there appears to be an apparent inconsistency between the instructions. The rule as to the height of the fence as announced in the second and third instructions is absolute, while in the twelfth it is made to depend upon the matter of repairs. We need do no more than to call attention to this matter, so that it may not occur upon a retrial of the case.

II. The following and other like questions were asked plaintiffs' witnesses, and were objected to as incompetent, and not calling for the correct measure of damages. In each case the ruling was against defendant, and it excepted. "What was the market value of that horse less after than before the injury, if anything? What, in your judgment, was that horse worth less in the market by these curbs, if anything? What, in your judgment, was that horse worth less, if anything, by reason of the injuries?" It is contended that this was simply calling for testimony as to the amount of plaintiffs' damage. On the other hand, it is contended that there is a difference between asking a witness how much a party's damage was, and how much less in value his property was, if anything, by reason of the injury. True, the result reached, so far as figures are concerned, is the same in both cases. As this case must be reversed for the reasons heretofore stated, and as the question is not likely to arise upon another trial, we need give it no further consideration. REVERSED.